Argued and submitted January 11, reversed in part,
affirmed in part August 8, reconsideration denied October 12,
petition for review denied October 30, 1984 (298 Or 150)

FASSETT et al,
*Respondents,*

*v.*

DESCHUTES ENTERPRISES, INC. et al,
*Appellants.*

(31441; CA A27234)

DESCHUTES ENTERPRISES, INC.,
*Appellant - Cross-Respondent,*

*v.*

FASSETT et al,
*Respondents - Cross-Appellants.*

(31434; CA A27235)
(Cases consolidated)

686 P2d 1034

John R. Faust, Jr., Portland, argued the cause for appellants and appellant - cross-respondent. With him on the briefs was Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

R. L. Marceau, Bend, argued the cause and filed the brief for respondents and respondents - cross-appellants.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

WARDEN, J.

## WARDEN, J.

Defendants Ole J. Lilleoren (Lilleoren) and his solely owned corporation, Deschutes Enterprises, Inc. (Deschutes), appeal a judgment in case No. CA A27234 awarding plaintiffs, Leroy Fassett and Donna Fassett Reynolds (Fassetts) the sum of $52,800, plus attorney's fees and costs. Deschutes also appeals a judgment entered in case No. CA A27235 awarding damages of $32,000 to the Fassetts, who cross-appeal in that case. We reverse the judgment in case No. CA A27234 and affirm the judgment in case No. CA A27235.

The complicated set of facts in this case began in 1968, when the Fassetts sold the Skyline Steak House and Sage Room Lounge business and equipment in Bend to Gerald Corrigan and Ray Thomas. As part of that transaction, the Fassetts leased the business premises to Corrigan and Thomas. Lilleoren acquired a 40% interest in the restaurant business after Corrigan and Thomas purchased it. He guaranteed one-third of the Corrigan and Thomas contract with the Fassetts.

In 1971, Deschutes acquired the remaining Corrigan and Thomas interests. The lease was assigned to Deschutes, and Lilleoren personally guaranteed payment of the contract and the lease. Simultaneously, the Fassetts agreed to release Corrigan and Thomas from liability. Deschutes operated the business on the leased premises until 1975.

In 1975 Deschutes sold the restaurant business and equipment to Gerald and Carol Huston (Hustons) for $170,000. Three years remained of the original term of the lease, which Deschutes also assigned to the Hustons. The Fassetts consented to the assignment, and Lilleoren personally guaranteed the Hustons' obligation to the Fassetts under the lease.

On May 1, 1978, the Fassetts and the Hustons renewed the lease for five years. The rent, which had been $1050 per month, was raised to $1,600 per month. Lilleoren was not involved in the negotiations, nor was he notified of the increased monthly rent.

The Hustons paid the $1,600 monthly rent from May, 1978, through January, 1980, when they stopped paying. The Fassetts informed Lilleoren that the Hustons had stopped. On

May 20, 1980, the Hustons turned the keys to the leased premises over to the Fassetts, who put locks on the doors to secure it. The Hustons did not remove any of the restaurant equipment purchased from Deschutes that remained in the premises.

On June 16, 1980, the Hustons filed for bankruptcy. They still owed Deschutes $82,957.53. The trustee in bankruptcy advised the Fassetts that he hoped to sell the restaurant business as a going concern. He asked the Fassetts whether they would be willing to continue to lease the business premises, and they indicated that they would.

In the first part of December, the trustee advised both the Fassetts and Lilleoren that he was abandoning his efforts to find a buyer. Even though the Hustons had delivered possession of the premises, the Fassetts could not reopen the lounge, because the Oregon Liquor Control Commission required a bill of sale evidencing ownership of the equipment before it would issue a license.

Also in December, 1980, the Fassetts' attorney wrote Lilleoren that he was personally liable for the rent that the Fassetts were losing and requested a meeting with Lilleoren and his attorney to resolve the situation. The parties met in February, 1981. At that meeting, Lilleoren's lawyer told the Fassetts that Lilleoren would relinquish his interest in the equipment remaining on the premises for $40,000. The Fassetts counteroffered $10,000 to "remove the cloud on the title" to the equipment that had been created when Lilleoren filed a financing statement perfecting his security interest. The parties were unable to agree. On April 17, 1981, the Fassetts' attorney wrote to Lilleoren, demanding that the equipment be removed from the leased premises by May 1, 1981. Lilleoren arrived in Bend on April 29, claiming that he was prepared to remove the equipment. Mr. Fassett claims to have gone to the premises at the appointed time and that Lilleoren was not there. Each party had witnesses to his version of the events.

On February 9, 1982, Deschutes sued to recover the equipment. The Fassetts counterclaimed for their costs incurred in storing and preserving the equipment and for damages incurred by reason of their being unable to rent the premises housing it. On December 10, 1982, the Fassetts sued

Lilleoren on his guarantee for the Huston's unpaid rent and, in a separate claim for relief, sued both Deschutes and Lilleoren for interference with a prospective re-leasing of the premises. The two cases were consolidated for trial.

The court found in case No. CA A27235 that Deschutes was entitled to the return of its equipment and that the Fassetts were entitled to judgment of $32,000 on their counterclaim as damages for their being unable to lease the premises while Deschutes' equipment remained there. In case No. CA A27234 the court entered judgment for the Fassetts on Lilleoren's guarantee of the Hustons' rent in the sum of $52,800, plus interest of $6,557.43, and attorney fees and costs, less any sums recovered from Deschutes on the judgment in case No. CA A27235. Lilleoren and Deschutes appeal both judgments, and the Fassetts cross-appeal that portion of the judgment in case No. CA A27235 awarding Deschutes possession of the fixtures.

Lilleoren first argues that the trial court erred when it concluded that he was not discharged from his personal guarantee when the Fassetts and the Hustons renegotiated the monthly rental for the premises. He predicates his argument on the rule that a guarantor is discharged from his obligation when a modification of the agreement he has guaranteed materially increases the risk he initially incurred. The Fassetts counter by pointing out that Lilleoren was intimately familiar with the terms of the restaurant lease, which contains renewal option and rent escalation clauses:

"*Renewal Option.* If this lease is not then in default, Tenant shall have the option to renew this lease as follows:

"(a) The renewal term shall commence on the day following the date of termination of the preceding term and shall be for a period of five years.

"(b) This option can only be exercised by written notice to Landlord, prior to the expiration of the original term, of not less than 60 days.

"(c) The terms and conditions of the lease for each renewal term shall be the same as the original term except for this renewal option and rent.

"\* \* \* \* \*

"*Rent Escalation. The basic rent provided in this lease shall be increased or decreased, by a percentage equal to the percentage increase or decrease of the total property taxes*

*levied on account of the leased premises* and payable to Landlord for the fiscal year commencing with the last year of the term as compared with the property taxes paid for the tax year commencing July 1, 1967. Any adjustment of rent under this paragraph shall be revised on account of any adjustment in taxes after the adjustment in rent is initially determined." (Emphasis partly supplied.)

At the time of the lease renewal, the property taxes had increased from $2,401 to $3,271, an increase of 36.2%. A proportionate 36.2% increase in the monthly rental price of the property should have resulted in a monthly rental increase from $1,050 to $1,430. However, the renegotiated monthly rental payments were $1,600, an increase of over 50%.

The Fassetts contend that the emphasized language in the rent escalation clause must be interpreted as providing that the difference in tax value would only provide a starting point for negotiations between the parties as to the rent when the tenants exercised an option to renew. We disagree. The first sentence of the rent escalation clause states plainly that the monthly rent shall be increased *by a percentage equal to* the percentage of property taxes imposed. According to those terms, the percentage of change in the taxes did not provide a starting point for negotiations; it determined what change would automatically be made in the rent.

The next question is whether the increase in monthly rent resulting from the parties' renegotiations discharged Lilleoren from his personal guarantee of payment of the rent by the Hustons, as he urges. That, in turn, depends on whether the increase in the Hustons' monthly rental payment materially changed Lilleoren's risk under the guaranty agreement. If so, Lilleoren was discharged. *See Lloyd Corporation v. O'Connor,* 258 Or 33, 479 P2d 744 (1971).

" 'Where, without the surety's consent, the principal and the creditor modify their contract otherwise than by extension of time of payment

" '(a)    the surety, * * * is discharged unless the modification is of a sort that can only be beneficial to the surety, * * *

" '(b)    the compensated surety is

" '(i)    discharged if the modification materially increases his risk, and

" '(ii) not discharged if the risk is not materially increased but his obligation is reduced to the extent of loss due to the modification.' " 258 Or at 37 quoting Restatement of Security § 128 (1941).

A material change is one that a " 'careful and prudent person undertaking the risk would have regarded as substantially increasing the chances of loss.' " *Lloyd Corporation v. O'Connor, supra,* 258 Or at 37, quoting *Young v. American Bonding Company,* 228 Pa 373, 380-81, 77 A 623 (1910); *cf. Equitable Savings & Loan v. Jones,* 268 Or 487, 522 P 217 (1974) (sureties for trustee in bankruptcy held to obligation even though the risk was materially increased). The $550 increase in monthly rent payments is one that a reasonable and prudent person in Lilleoren's position would have regarded as materially increasing his risk of loss, particularly when he ought not to have expected an increase of more than $380 and, as all parties agree, he had not been notified of any increase. The increase in monthly rental payments was material. Without Lilleoren's consent to such a change, it served to discharge him as personal guarantor of the Hustons' indebtedness under the lease as a matter of law. *Marshall-Wells Co. v. Tenney et al.,* 118 Or 373, 244 P 84 (1926); Restatement of Security § 128, *supra.*

The Fassetts urge that, should we find merit in Lilleoren's argument, it does not follow that Lilleoren is completely discharged from the obligation of his guarantee. They point out that the Restatement rule provides for a reduction of the guarantor's obligation under some circumstance and that, accordingly, Lilleoren is obligated for rent at the lower figure of $1,430 per month. The Restatement provision upon which the Fassetts rely, however, is not relevant here. It is predicated on the assumption that the guarantor's risk *was not* materially increased. *See* Restatement of Security § 128, *supra.* As previously discussed, we have concluded that Lilleoren's risk *was* materially increased when the parties renegotiated the monthly rental to $1,600 instead of $1,430 without notifying Lilleoren or obtaining his subsequent ratification of the new amount. Consequently, Lilleoren was discharged. He therefore cannot be held liable for the lower figure urged by the Fassetts or for any other sum.

Deschutes contends that the trial court erred in case No. CA A27235 when it awarded the Fassetts $32,000 on their counterclaim for storage fees and damages arising from their inability to rent the premises because of the presence of Deschutes' equipment. The trial court found:

> "The Fassetts have been unable to re-let the premises primarily because of the personal property remaining on the premises. Defendants Fassett seek, in their counterclaim, recovery for storing and preserving the personal property. There was no evidence adduced as to what this damage is. There was evidence, however, of the reasonable monthly rental value of the building at $1,600 per month. Accordingly, defendants are entitled to judgment against Deschutes Enterprises, Inc. for $32,000 being the reasonable rental value from the date of abandonment (May, 1980) at [sic] the premises by the tenants Huston to the date of the judgment."

We review the record to determine whether the court's finding is supported by substantial evidence in the record, *Lloyd Corporation v. O'Connor, supra,* 258 Or at 36, and view the evidence in the light most favorable to the Fassetts, the prevailing parties. *Livran v. Fowler Tire Service, Inc.,* 282 Or 379, 383-84, 578 P2d 1244 (1979).

Deschutes argues that the trial court's conclusion that the Fassetts were precluded from renting the premises because of Deschutes' equipment is without support in the record. We disagree. Mr. Fassett testified that the premises could not be rented for another type of business with the equipment in it and that it could not be used for the same type of business, because the Oregon Liquor Control Commission would not issue a license unless the operator held a bill of sale to the equipment. Deschutes introduced no evidence rebutting Fassett's testimony and does not dispute it here. That testimony is the only evidence in the record on this point and constitutes substantial evidence supporting the trial court's conclusion that the Fassetts were unable to lease the premises so long as Lilleoren's equipment remained on them. We see no reason to disturb that conclusion.

Deschutes also contends that there was no evidence upon which the trial court could find that $1,600 a month was the reasonable fair market rental value of the premises from the date of abandonment to the date of entry of the judgment. Again, however, Mr. Fassett, the owner, offered his own

testimony that $1,600 a month was the fair rental value of the property. That testimony is enough to support the trial court's finding that the reasonable fair market rental value of the premises was $1,600 a month. Our review convinces us that the trial court's findings and conclusion are supported by evidence.

■        On cross-appeal, the Fassetts argue that the trial court erred when it concluded that Deschutes was entitled to the return of the fixtures in the restaurant. They cite authority in support of their contention that, because neither the Hustons nor Deschutes removed the equipment before the abandonment of the premises on May 20, 1980, their rights to the fixtures terminated on that date. We do not find it necessary to reach that issue, however, because on April 17, 1981, the Fassetts made written demand on Lilleoren to remove the equipment from the premises. We agree with the trial court:

> "Defendants Fassett argue that, as to trade fixtures, the tenant (Hustons) had to remove the trade fixtures before the end of the lease or it is considered abandoned property and that Deschutes Enterprises, Inc. has no better right to remove these items than Hustons have. The authorities cited by counsel for Fassetts seems [sic] to support this rule. However, the Fassetts never took this position until litigation ensued. To the contrary, the parties have consistently, prior to litigation, treated the personal property (including the trade fixtures) as belonging to Deschutes Enterprises, Inc."

The position taken by the Fassetts here, and at trial below, is inconsistent with their unequivocal assertion before the time of trial that the equipment belonged to Deschutes. In fact, there were negotiations among the parties regarding the Fassetts' possible acquisition of that equipment. The Fassetts' argument here is also logically inconsistent with their claim for damages based on their inability to lease the premises allegedly because of the presence of Deschutes' equipment. If the abandoned equipment in fact belonged to the Fassetts, as they now urge, there would have been no impediment to their leasing the premises. The trial court correctly concluded that Deschutes was entitled to the return of this equipment.

The judgment in case No. 31441 (CA A27234) is reversed. The judgment in case No. 31434 (CA A27235) is affirmed.