Argued and submitted October 22, 1986, affirmed on appeal; on cross-appeal, reversed and remanded with instructions; otherwise affirmed May 6, 1987

SAMUELSON,
*Plaintiff,*

*v.*

PROMONTORY INVESTMENT CORPORATION et al,
*Defendants,*

LEWIS AND CLARK STATE BANK,
*Respondent,*

SCOTT ACCEPTANCE CORPORATION,
*Respondent - Cross-Appellant.*

SWEARENGIN,
*Appellant - Cross-Respondent,*

*v.*

ARTHUR et al,
*Defendants.*

EVERGREEN FOREST PRODUCTS, INC.,
*Plaintiff,*

*v.*

SWEARENGIN,
*Appellant - Cross-Respondent,*

LEWIS & CLARK STATE BANK,
*Respondent,*

SCOTT ACCEPTANCE CORPORATION,
*Respondent - Cross-Appellant,*

PROMONTORY INVESTMENT CORPORATION et al,
*Defendants.*

SWEARENGIN,
*Appellant - Cross-Respondent,*

*v.*

ARTHUR et al,
*Defendants.*

ALDINGER,
dba Carpets Direct of Oregon,
*Plaintiff,*

*v.*

SWEARENGIN,
*Appellant - Cross-Respondent,*

SCOTT ACCEPTANCE CORPORATION,
*Respondent - Cross-Appellant,*
LEWIS & CLARK STATE BANK,
*Respondent,*
PROMONTORY INVESTMENT CORP.,
*Defendant.*
SWEARENGIN,
*Appellant - Cross-Respondent,*

*v.*

ARTHUR et al,
*Defendants.*

(A8304-02692 [control], A8401-00399 and A8401-00551;
CA A36343)

736 P2d 207

Paul D. Schultz, Oregon City, argued the cause for appellant - cross-respondent Swearengin. With him on the briefs were George L. Hibbard and Hibbard, Caldwell, Bowerman, Schultz & Hergert, Oregon City.

Christine Kosydar, Portland, argued the cause for respondent - cross-appellant Scott Acceptance Corporation and respondent Lewis & Clark State Bank. With her on the briefs was Stoel, Rives, Boley, Fraser & Wyse, Portland.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

YOUNG, J.

## YOUNG, J.

These separate actions were commenced to foreclose construction liens against land owned by defendant-third party plaintiff Swearengin (Swearengin) and leased to defendant Promontory Investment Corporation (Promontory). Lewis and Clark State Bank (Bank) and Scott Acceptance Corporation (Scott) by way of a cross-complaint sought to foreclose trust deeds on Swearengin's land which were given to secure loans made to Promontory. Swearengin sought to avoid the foreclosure by asserting that she was discharged as surety for the loans. The cases were consolidated for trial. All claims and interests of all parties have been determined. The trial court foreclosed the trust deeds and awarded Bank and Scott reasonable attorney fees. Swearengin appeals, and Scott cross-appeals.

This complex litigation involves multiple parties and numerous claims. We include only the facts relevant to the issues raised on the appeal and the cross-appeal. The lease between Swearengin and Promontory required Swearengin to subordinate her fee interest as security for the loans made to Promontory to be used in connection with the development of the property. In May, 1982, Promontory borrowed $580,000 from Bank and $200,000 from Scott to finance construction. Promontory signed promissory notes evidencing the loans. The notes provided for interest to be paid monthly at the prime rate plus 2-1/2 percent per year, with a due date of October 6, 1983. Promontory also executed a trust deed encumbering Swearengin's land to secure the notes. Swearengin did not sign the notes, but she subscribed the trust deeds "to give evidence that her lessor interest is hereby subordinate to the lien of this trust deed." She also executed a separate subordination agreement with Bank and Scott, which required her to subordinate to loans with an interest rate not exceeding 18 percent. The loan funds were disbursed by Bank and Scott for, *inter alia*, rent, acquisition of the leasehold and brokers' fees.

In November, 1983, Promontory's notes were in default. Negotiations between Bank, Scott and Promontory resulted in three modifications to the original May, 1982, agreements. First, Promontory was given an extra six months to repay the debts to Bank and Scott. Second, a floor of 16

percent was placed on the interest, retroactive to the date of the original agreements with Bank and Scott. Finally, Scott advanced an additional $48,711.53 to cure the default existing on unpaid interest owing to Bank. The modification agreement between Scott and Promontory tied the additional loan into Scott's trust deed. Swearengin did not consent to the modifications, and she had no knowledge of them until some time in April, 1984.

Despite the modification agreements, Promontory again defaulted on the loans. Scott and Bank then proceeded to foreclose their trust deeds. Swearengin affirmatively defended and claimed that her fee interest had been released from the liens of the trust deeds (1) because modifications to the underlying obligations were made without her consent or knowledge and (2) by Bank's and Scott's breach of their agreement with her to disburse funds only for development of the property. The trial court foreclosed the trust deeds, but absolved Swearengin's land from any liability for Scott's additional $48,711.53 loan. The amount of the lien to be foreclosed included Scott's and Bank's reasonable attorney fees. The attorney fee award included amounts actually expended on attorney fees as well as amounts for future legal services. Swearengin appeals from the judgment and from the attorney fee award; Scott cross-appeals from the judgment, insofar as it excludes from the amount of its lien the additional $48,711.53.

Swearengin's first three assignments of error relate to whether certain actions of Bank, Scott and Promontory discharged her as surety for the loans. This case was tried on the theory, and the parties agree, that, by subordinating her fee interest to Bank's and Scott's trust deeds, Swearengin became a surety for Promontory's loans to the extent of the value of the land and that Swearengin is a compensated surety and not a gratuitous surety.[1] Accordingly, we assume that suretyship principles apply to the financing arrangements here. In *Lloyd Corporation v. O'Connor, supra* n 1, the court adopted the rule of the *Restatement, Security,* § 128:

" 'Where, without the surety's consent, the principal and

---

[1] In Oregon, a surety who is not in the surety business, but who serves for compensation, is treated as a compensated surety rather than a gratuitous surety. *See Lloyd Corporation v. O'Connor,* 258 Or 33, 36, 479 P2d 744 (1971). In contrast, *Restatement, Security,* §82, comment *i,* treats such a person as a gratuitous surety.

the creditor modify their contract otherwise than by extension of time of payment

"* * * * *

"(b)  The compensated surety is

"(i)  discharged if the modification materially increases his risk, and

"(ii)  not discharged if the risk is not materially increased but his obligation is reduced to the extent of loss due to the modification.' " 258 Or at 37.

A material change is one that a careful and prudent person undertaking the risk would regard as substantially increasing the chance of loss. *Fassett v. Deschutes Enterprises,* 69 Or App 426, 432, 686 P2d 1034, *rev den* 298 Or 150 (1984).

■      Swearengin first argues that the extension of additional time for repayment of the loans and the addition of a 16 percent interest floor without her consent or knowledge discharged her as surety. We hold that she was not discharged, because the extension of time and the 16 percent interest floor were not material changes. By her separate agreement with Bank and Scott, Swearengin agreed to subordinate to a loan with interest up to 18 percent and a three-year repayment schedule. Because the changes do not exceed those limits, they could not substantially increase her risk. The trial court correctly held that the extension of time and the 16 percent interest floor did not constitute a discharge.[2]

Swearengin's second argument is that Scott's advance of the additional $48,711.53 discharged her. The trial court held:

"The advance of $48,711.53 by Scott to pay delinquent interest on the [Bank] loan increased the interest payable on the debt, but the additional loan replaced the obligation to pay [Bank] interest thereby avoiding foreclosure. This modification increased the total debt due to Scott by 24 percent and increased the interest payable on that debt. This increase was material. It did not materially increase the risk that the principal obligors would not be able to pay, however; therefore,

---

[2] Under *Lloyd Corporation v. O'Connor, supra,* Swearengin is entitled to a *pro tanto* release to the extent of loss due to non-material changes. However, she has not argued that any loss resulted from those two modifications. We therefore affirm the trial court's disposition on this issue.

defendant Swearengin is not discharged from the Scott obligation, but the obligation is reduced by $48,711.53 with interest thereon from the date of the modification."

Swearengin argues that the change was material, which entitles her to a complete discharge. Scott, on the other hand, argues that the trial court erred in giving Swearengin even a *pro tanto* discharge, because Swearengin had agreed to subordinate her fee interest to future advances.[3] We agree with Scott.

In *Walter & Co. v. Van Domelen,* 246 Or 275, 425 P2d 166 (1967), the court held that a revocation of a continuing guaranty by one of the guarantors did not release the others:

"The contract provided that '[s]uch notice of revocation shall be effective only as to the person giving such notice.' We think that the express agreement that revocation by one guarantor would not affect the liability of the other guarantors renders any general rule to the contrary inapplicable. The contract provisions amounted to a waiver in advance of the defense now urged." 246 Or at 279.

Similarly, in *Enterprise Hotel Co. v. Book,* 48 Or 58, 85 P 333 (1906), the court rejected an argument that the sureties were discharged because all payments were not made at the time or in the manner stipulated in the contract:

"Now, in this case, the bond contains a provision that payments made at times or in a manner other than as stipulated in the contract shall in no wise affect the validity of the obligation or operate to release the sureties from liability thereon. It is plain that under this provision the sureties cannot complain because all payments were not made at the time or in the manner stipulated in the contract as they had waived that defense in advance." 48 Or at 62.

From these cases, it is clear that a surety may consent in advance to certain modifications of the debtor's obligation and that such consent will preclude a discharge by the surety. *Accord: Restatement, Security,* § 128, comment *c.*

Swearengin agreed to subordinate her fee interest to the trust deeds, paragraph 21 of which provides:

"Upon request of borrower, lender, at lender's option prior

---

[3] Scott raises this argument in its cross-appeal.

to full reconveyance of the property by trustee to borrower, may make future advances to borrower. Such future advances, with interest thereon, shall be secured by this deed of trust when evidenced by promissory notes stating that said notes are secured hereby."

Swearengin's subordination to the trust deeds constitutes a waiver of the defense of discharge on account of any future advance covered by paragraph 21.

Promontory's note for the additional advance states that it is secured by Scott's trust deed. In addition, Promontory signed a separate document which states:

"Additional funds in the sum of $48,711.53 have been advanced pursuant to the terms of paragraph 21 of said trust deed. This additional advance is secured by a promissory note dated December 1, 1983, and the above referenced trust deed."

Because the future advance complied with paragraph 21, we hold that Swearengin cannot prevail on the defense of discharge based on it.[4] Thus, the trial court correctly held that the additional advance of funds did not completely discharge Swearengin, but it erred in reducing the amount of the lien by $48,711.53.

Swearengin next argues that she was discharged by Bank's and Scott's disbursements of loan funds for rent paid to her, acquisition of the leasehold by Promontory and brokers' fees. She argues that the disbursements violated a requirement that the loan proceeds be "expended in connection with the development of the property." Her theory is this: The lease contains a list of examples of approved expenditures. All of the examples are designed to enhance the value of her property. The rule of *ejusdem generis*[5] would require all expenditures to be of the same nature. Because rent, acquisition of the leasehold and brokers' fees are not designed to

---

[4] Even if the note did not comply with paragraph 21, the additional advance is authorized under paragraph 7 of the trust deed, which provides that the lender may take such action as necessary to protect its interest and that any amounts disbursed pursuant to paragraph 7 shall become additional indebtedness secured by the trust deed.

[5] When general words follow the enumeration of specific classes of things, the general words should be construed as restricted to the things of the same type as those specifically enumerated. *Britton v. Bd. of Podiatry Examiners,* 53 Or App 544, 552, 632 P2d 1273, *rev den* 292 Or 109 (1981).

enhance the value of her property, the disbursements violated the agreement, and she is therefore discharged.

The problem with that argument is that the challenged expenditures enhance the value of the property, at least as much as some of the examples given in the lease. For example, architects' fees and loan interest do not add physically to the value of property; they enhance the value of property only to the extent that they are necessary indirect expenses of construction. The challenged expenditures likewise are necessary indirect expenses of construction. For example, acquisition of the leasehold is a necessary indirect expense, because construction could not take place without an interest in the property upon which the improvements are to be constructed. Similarly, construction could not take place without the loans, which necessitated the brokers' fees. Finally, even assuming that Swearengin has the right to challenge a disbursement that she solicited and knowingly accepted, the rent was necessary to preserve the leasehold. The trial court correctly held that Swearengin was not discharged by the challenged disbursements.

Finally, Swearengin challenges the amount of attorney fees included in the lien of the trust deeds. The attorney fees awarded included amounts actually billed and amounts for estimated future legal services relating to execution of the judgment, the pending foreclosure sale and discharge of the receiver. Swearengin argues that, because she agreed to subordinate only to the liens created by the trust deeds, and because under paragraph 7 of the trust deed only attorney fees actually disbursed by Bank and Scott become part of the lien created by those documents, the trial court erred in including attorney fees that were not actually disbursed, *i.e.,* the fees for estimated future legal services. Scott and Bank, on the other hand, argue that paragraph 18, not paragraph 7, applies here and that paragraph 18 is not limited to fees actually disbursed. We agree with Scott and Bank.

Paragraph 7 provides that the "Lender at Lender's option * * * may * * * disburse such sums and take such action as is necessary to protect the Lender's interest, including, but not limited to, *disbursement* of reasonable attorney's fees * * *." (Emphasis supplied.) However, paragraph 7 applies to

fees incurred to preserve the lender's security before foreclosure, such as the additional advance of $48,711.53 by Scott to prevent foreclosure of Bank's superior interest. It does not apply to fees incurred in the event of default, acceleration and foreclosure, where paragraph 18 applies:

> "Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorney fees."[6]

Unlike paragraph 7, paragraph 18 is not limited to fees actually disbursed. The trial court had discretion to include fees for estimated future legal services relating to execution of the judgment, the pending foreclosure sale and discharge of the receiver.

The cross-appeal has been resolved in Scott's favor. *See* n 4, *supra,* and accompanying text.

Affirmed on appeal; on cross-appeal, reversed and remanded with instructions to increase the amount of Scott's lien by $48,711.53 plus interest from the date of the advance; otherwise affirmed.

---

[6] Swearengin does not argue that fees awarded under paragraph 18 do not take priority over her fee interest.